IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL W. KURTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-00138-F |
| | ) | |
| CAROLYN W. COLVIN, acting | ) | |
| Commissioner Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant (Commissioner) issued a final decision denying Plaintiff's application for disability benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Judge Stephen P. Friot referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the court affirm the Commissioner's decision.

I. **Administrative proceedings.**

In his applications for benefits, Plaintiff alleged that his impairments became disabling on January 26, 2011, and later amended that date to April 1, 2012. AR 128, 35. The Social Security Administration (SSA) denied

Plaintiff's claims, and at his request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 30-53. In his April 30, 2013 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 23. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-4, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ will conduct a residual functional capacity (RFC)[1] assessment at step four to determine what Plaintiff can still do despite his impairments. *See* 20 C.F.R. §§

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

2

404.1545(e), 416.945(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

### III. Plaintiff's claims.

Plaintiff challenges the ALJ's credibility and RFC assessments. Doc. 14, at 4-15. The undersigned finds no grounds for reversal in either argument.

### IV. Analysis.

#### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). In reviewing the ALJ's opinion, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d

3

1156, 1167 (10th Cir. 2012). Additionally, the court may find an ALJ's error harmless, if "based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way[.]" *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B. The ALJ's findings.

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged onset date and has severe: chronic pulmonary disease, cardiovascular disease/hypertension, degenerative disc disease, and depression. AR 15. The ALJ then determined that Plaintiff has the RFC to perform sedentary work with sitting up to six hours, standing up to two hours, and walking up to two hours, but needs to "alternate sitting and standing as necessary." *Id.* at 17-21. The ALJ found that with this RFC, Plaintiff cannot perform his past relevant work can perform other work existing in significant numbers in the national economy, including charge account clerk, document processor, and tube operator. *Id.* at 22-23.

### C. The ALJ's alleged errors in assessing Plaintiff's credibility.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible

4

. . . ." *Id.* at 21. Plaintiff challenges this credibility determination claiming that the ALJ: (1) made numerous factual errors; (2) failed to link his findings to substantial evidence; and (3) recited only "meaningless boilerplate" language under the "guise" of findings. Doc. 14, at 9-10.

### 1. The ALJ's duty to assess credibility.

As noted above, once an ALJ finds that a claimant has severe impairments, he must take the next step and assess the claimant's RFC. *See supra* § I. The RFC assessment generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [his] symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the

individual's functional limitations and restrictions due to pain or other symptoms. *See id.* at *3; *Keyes-Zachary*, 695 F.3d at 1167.

An ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements[.]" SSR 96-7p, 1996 WL 374186, at *4. In doing so, he should closely and affirmatively link his findings with substantial evidence. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). However, "[c]redibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). And as long as the ALJ sets forth the evidence that he relies upon in evaluating credibility, he "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167 (citation omitted). Again, "common sense, not technical perfection, is [the court's] guide." *Id.*

### 2. The ALJ's credibility assessment.

Plaintiff challenges the ALJ's credibility assessment on three grounds. The undersigned disagrees with each argument.

#### a. The ALJ's alleged factual errors.

First, Plaintiff alleges that the ALJ made numerous factual errors. Doc. 14, at 6-7. The undersigned finds that any error was harmless.

Regarding Plaintiff's daily activities, the ALJ stated:

> The claimant testified that [he] arises in the morning and drinks a cup of coffee. He usually attends clinic at VA three mornings a week. He helps around the house sometimes needing assistance due to bending limitations. He takes his medications without a reminder. He assists his wife with the care of two teenagers living at home. He waters and feeds the pets. He can meet his hygienic needs although sometimes needs help out of the bathtub. He does not drive by choice as opposed to exertional or non-exertional limitation[s]. He helps with laundry and chores but does not do yard work generally. He can sit and work on the computer. He can handle household financial accounts. He testified that he follows instructions – written and oral well. He drinks occasionally. In his Function Report, the claimant stated that he had no problems socializing and in fact had improved his social skills since visiting with people at the VA. (Exhibit 5E). At the hearing, he stated that he socializes little and has few friends. He uses a cane to assist with walking.

AR 18.

The Plaintiff points to the following alleged errors:

### i. Plaintiff's marital status.

According to Plaintiff, the ALJ first erred in finding that he is married, when in fact he testified to having a girlfriend. Doc. 14, at 6 (citing AR 43). But as the Commissioner points out, Plaintiff's marital status is irrelevant to the disability determination. Doc. 15, at 12. So, the undersigned finds this minor factual error to be harmless.

7

### ii. Plaintiff's assistance with child and pet care.

The ALJ found that Plaintiff "assists his wife with the care of two teenagers living at home, and waters and feeds the pets." AR 18. According to Plaintiff, the ALJ "turned [his] statement around," because he said that his girlfriend and children assist *him*. Doc. 14, at 6. Plaintiff also complains that the ALJ "erroneously found that [Plaintiff] actively provides 'childcare services' on a daily basis." *Id.*

Plaintiff stated in his Function Report he "tr[ies] to take care of my 18 yrs old son, my 12 yr old daughter, and my fiancée[2] by helping them around the house," and that he "feed[s] and water[s]" the pets and "make[s] sure they go to the bathroom outside." AR 197. He indicated that his kids and fiancée help him with the pet care as well. *Id.*

The undersigned finds no factual errors in the ALJ's assessment. Whether Plaintiff assists the people living in his home, or they assist him, is a matter of semantics. In either case it is clear that Plaintiff is not performing the work alone. And the ALJ did not find that Plaintiff actively provides childcare on a daily basis – he found that Plaintiff "assists . . . with the care of two teenagers living at home." AR 18. This finding conforms to Plaintiff's Function Report.

---

[2] In his Function Report, Plaintiff used the term "fiancée," AR 197, and at the hearing, Plaintiff referred to his "girlfriend." *Id.* at 43.

### iii. Plaintiff's personal care.

Summarizing Plaintiff's statements, the ALJ found that Plaintiff "can meet his hygienic needs although sometimes needs help out of the bathtub." *Id.* Plaintiff argues a factual error, complaining that he "needs help using the toilet and pulling on pants and getting in and out of the bathtub." Doc. 14, at 6. Again, the undersigned finds no reversible error.

In his Function Report, Plaintiff claimed he needs help getting his pants up, getting in and out of the bathtub, and getting off the toilet. AR 197. However, at the hearing Plaintiff testified that although it is "hard," he is able to "take care of [his] own personal needs, [such as] bathing, dressing, [and] grooming," and that while he "has to struggle," he "can get [his pants] on without help. *Id.* at 44.

It is the ALJ's province to resolve evidentiary conflicts, and the undersigned finds substantial evidence to support his conclusion. *See Keyes-Zachary*, 695 F.3d at 1172 ("The ALJ, however, was free to resolve evidentiary conflicts because there is substantial evidence to support his conclusion.").

### iv. Plaintiff's driving.

The ALJ concluded that Plaintiff does "not drive by choice as opposed to exertional or non-exertional limitation[s]." AR 18. In his Function Report,

Plaintiff indicated that he does not drive because of "numbness and pain in [his] legs" and a fear of having a "passing out attack." *Id.* at 199. At the hearing, Plaintiff testified that he does not drive because he cannot "[c]limb[] in and out of the truck," and stated that his girlfriend drives him because of his "discomfort." *Id.* at 42-43.

The undersigned agrees that there is no evidence to support the ALJ's finding that Plaintiff simply chooses not to drive. However, based on the numerous other factors the ALJ correctly and properly considered, the undersigned can confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter in any other way. *See Allen*, 357 F.3d at 1145. So, the court should find this error harmless.

v. **Plaintiff's daily activities.**

The ALJ found that Plaintiff "helps around the house sometimes needing assistance due to bending limitations," and is "able to perform a wide variety of activities including household chores, shopping and providing childcare services." He also performs computer work, helps with laundry, and manages household financial accounts. AR 18. The ALJ further noted that Plaintiff "does not generally perform yard work." *Id.*

In his Function Report, Plaintiff stated that he "sits while cooking" and can prepare "simple foods." *Id.* at 198. He also noted that he shops "by computer" and "in stores" with his fiancée (using an electric shopping cart), and his assistance with laundry is limited as he cannot bend. *Id.* Plaintiff also stated that he can pay bills, count change, handle a savings account, and use a checkbook. *Id.* at 199.

Comparing the evidence with the ALJ's conclusions, the undersigned finds that the ALJ acknowledged Plaintiff's inabilities and did not overstate Plaintiff's abilities regarding household chores.

### vi. Plaintiff's socialization.

Finally, Plaintiff claims that he testified that "he has no friends and no social activities other than . . . attending his weekly VA mental health counseling sessions . . . ." yet "the ALJ erroneously leapt to an unsupported finding that [Plaintiff] has increased social functioning" and "has no problems socializing." Doc. 14, at 7.

The ALJ acknowledged Plaintiff's testimony that "he socializes little and has few friends." AR 18; *see also id.* at 48. Yet the ALJ also noted that in his Function Report Plaintiff indicated that he "had no problems socializing and in fact had improved his social skills since visiting with people at the VA." *Id.* at 18. Indeed, the Function Report indicates Plaintiff is "very

11

[a]ctive in his appointments" and has become "more social" as he is "around more people at the VA hospital." *Id.* at 200-01. Again, the ALJ may resolve conflicting evidence, and the undersigned finds no error in his analysis.

Despite two harmless errors, the undersigned finds substantial evidence to support the ALJ's factual findings.

### b. The ALJ's alleged failure to link his findings to substantial evidence.

Plaintiff acknowledges that the ALJ: (1) summarized the relevant legal standards for a credibility assessment; (2) summarized Plaintiff's testimony;[3] and (3) restated the medical evidence. Doc. 14, at 8. Nevertheless, Plaintiff claims that the ALJ "provides no explanation of how he then applied the requisite criteria to ascertain credibility to the testimony and medical records." *Id.*[4] The undersigned disagrees.

---

[3] Plaintiff states that the ALJ summarized "selected portions" of his testimony, but does not indicate which portions the ALJ omitted. Doc. 14, at 8. The undersigned will not search the record for Plaintiff nor address under-developed arguments. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (finding that inadequately framed or developed "perfunctory complaints" are insufficient to invoke review).

[4] Plaintiff also briefly argues that the ALJ's errors "bear full semblance of the ALJ's erroneously picking and choosing of selected parts of [the] record[] . . . ." Doc. 14, at 9. As noted above, Plaintiff fails to cite to any specific evidence that the ALJ ignored, and the undersigned will not search the record for him nor address under-developed arguments. *See Murrell*, 43 F.3d at 1389 n.2.

In his credibility assessment, the ALJ set forth relevant medical evidence and compared it with Plaintiff's testimony and Function Report. AR 18-21. And while the ALJ did not engage in a "formalistic factor-by-factor recitation of the evidence," he was not required to do so. *See Keyes-Zachary*, 695 F.3d at 1167 (citation omitted). Because the undersigned can follow the ALJ's reasoning and can determine that he applied the correct legal standards, the undersigned finds no grounds for reversal. *See id.* at 1166-67; *see also Bales v. Colvin*, 576 F. App'x 792, 800 (10th Cir. 2014) (finding that the ALJ "closely and affirmatively linked" the credibility determination with substantial evidence when she discussed and considered the claimant's subjective testimony and the medical evidence of record).

### c. The ALJ's alleged use of boilerplate language.

Finally, Plaintiff alleges that "the ALJ's ultimate credibility determination is a singularly boilerplate sentence: 'the claimant's statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely credible to the extent for the reasons explained in this decision.'" Doc. 14, at 8. Plaintiff's use of the word *ultimate* is significant.

The ALJ's credibility assessment spans three pages and includes recitation of the medical evidence and Plaintiff's testimony. AR 18-21. So his

13

*ultimate conclusion*, not his credibility assessment, is one sentence. Further, while that one sentence might be a commonly used "boilerplate" sentence, such "boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary*, 695 F.3d at 1170 (citation omitted). Here it does not, and the undersigned finds no grounds for reversal.

### D. The ALJ's alleged errors in assessing Plaintiff's RFC.

Next, Plaintiff attacks the ALJ's RFC assessment on three grounds. First, Plaintiff alleges that "the ALJ's errors in his credibility assessment necessarily affect and poison the subsequent RFC determination . . . ." Doc. 14, at 11. Then, in two intertwined claims, Plaintiff argues that the RFC's inclusion of an "option to sit or stand at will" is impermissibly vague and the ALJ should have defined the sit/stand option to mirror Plaintiff's testimony that he cannot sit for longer than approximately thirty minutes or stand longer than approximately five minutes. *Id*. at 13-14. The undersigned finds no reversible error in the RFC assessment.

#### 1. The credibility assessment's impact on the RFC.

Building on his previous arguments, Plaintiff claims that the ALJ's credibility errors fatally infect the RFC determination. *Id*. at 11. However, the undersigned finds no reversible error in the ALJ's credibility assessment.

*See supra* § IV(C)(2)(a)-(c). So, Plaintiff's reliance on this argument is misplaced.

### 2. The RFC's sit/stand option.

The ALJ concluded that Plaintiff can stand for a total of six hours in day, and sit for total of two hours in a day, but found that Plaintiff needs the ability to "alternate sitting and standing as necessary." AR 17. Contrary to Plaintiff's suggestion, the undersigned finds that the latter RFC notation incorporates Plaintiff's testimony that he can sit for only about thirty minutes, and stand for only about five minutes, before he needs to move. *Id.* at 44.

Further, the undersigned finds that the ALJ's sit/stand option is not impermissibly vague. It is true that an "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7. However, the "option to sit or stand at will permits the claimant to control the frequency at which [he] alternates positions. No greater specificity would be possible." *Jimison v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013). Further, while the ALJ used the phrase "as necessary" in the RFC, he used the term "at will" with the vocational expert (VE). That is, the ALJ questioned the VE, stating: "Assume for me, please, a gentlemen aged 42, high school education, limited due to physical conditions

and related surgeries and medical interventions to sedentary work . . . . He further could work only in a circumstance where he had the option to sit or stand at will." AR 50. The VE identified three jobs such a claimant can perform: charge account clerk, document processor, and tube operator. *Id.* at 51.[5] Under such circumstances, the ALJ's RFC assessment, and subsequent reliance on the VE's testimony, was proper. *See Jimison*, 513 F. App'x at 792 (finding no reversible error where the ALJ stated in the RFC that claimant "had the option to sit or stand" and asked the VE to consider a claimant that could work "'either sitting down or standing up, whichever way she wanted to'" and the VE testified that she "understood the hypothetical to mean that the 'sit/stand option was at will'" (citation and brackets omitted)).

## V. Recommendation and notice of right to object.

For the reasons discussed above, the undersigned recommends that the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation by the 24th day of February, 2015, in accordance

---

[5] The VE gave the following job availability numbers: charge account clerk − 300 local and 37,200 national; document processor – 2,300 local and 190,200 national; and tube operator – 300 local and 22,000 national. AR 51. The VE then testified that these jobs "already offer a sit/stand option" and that if it were "a sit/stand option at will it would probably reduce the numbers by about 20 percent." *Id.* Although Plaintiff does not raise this as an issue, the undersigned notes that even at a twenty percent reduction, the number of national jobs available for each job title would be 29,760, 152,160, and 17,600 respectively.

with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 4th day of February, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE